## GEORGE M. TURNER, Respondent, v. ALBERT MORRIS, Appellant.

**Springfield Court of Appeals, February 7, 1910.**

1. **SALES: Growing Crops: Sale by Oral Contract.** It is now well established, both in England and this country, that annual crops, or *fructus industriales*, are to be regarded as personal chattels, independent of and distinct from the land, capable of being sold by oral contract, and this without regard to whether the crops are growing, or, having matured, have ceased to derive any nutriment from the soil.

2. **EVIDENCE: Custom: Contracts: Proof of Custom not Admissible to Vary Express Contract.** Where the landlord and tenant have entered into an express contract as to how much of the crop each is to receive, evidence of what was the general custom in that neighborhood with reference to the division of the crops between landlord and tenant is inadmissible.

3. ——————: **Admissibilty of Conversation not in Presence of Parties to Suit.** Under a contract between a landlord and tenant, the landlord was to receive two-thirds of the crop in case he did half the work and paid half the expense. In a suit between the landlord and purchaser of the farm, where one of the questions in issue was whether the landlord had complied with the contract between himself and the tenant, it was proper to admit evidence of conversations between the landlord and his tenant as to paying the expenses of making and harvesting the crop, though the purchaser of the farm was not present.

4. **INSTRUCTIONS: Error in Appellant's Favor: Harmless Error.** Where the error in an instruction given at request of appellant is in his favor, and the instruction given for respondent correctly declares the law, the judgment will not be reversed.

Appeal from Barry Circuit Court.—*Hon. F. C. Johnson,* Judge.

AFFIRMED.

*J. S. Davis* for appellant.

(1) If under their contract, plaintiff and Johnston were tenants in common of this wheat crop, then the possession of one was the possession of the other. Thompson v. Mawhinney, 17 Ala. 368; Putnam v. Wise, 37 Am. Dec. 309; Daniels v. Brown, 69 Am. Dec. 505; 4 Am. and Eng. Ency. of Law (1 Ed.), 996. (2) The deed was made in February, 1905, and this court judicially knows the growing wheat was then very small, and by the warranty deed, without reservation, all of plaintiff's interest in the wheat passed to the defendant. M'Ilvaine v. Harris, 20 Mo. 457; Pratte v. Coffman, 27 Mo. 426; State v. Faber, 37 Mo. 80; Hayden v. Burkemper, 101 Mo. 664; 4 Am. and Eng. Ency. of Law (1 Ed.), 887.

*C. M. Landis* for respondent.

(1) The wheat in controversy being *fructus industriales* is personal property and can be the subject-matter of an oral contract. Brittain v. McKay, 25 N. C. 265; Edwards v. Thompson, 85 Tenn. 720; Willis v. Moore, 59 Tex. 628; Silherberg v. Trilling, 82 Tex. 523; Garth v. Caldwell, 72 Mo. 627. (2) The contract between Johnson and Turner made the right of Turner to the bone of contention in this case depend upon a full and complete compliance with the contract entered into at the time it was sown, and that contract devolved the duty upon Turner to do half the work in harvesting and threshing before he had any right to have this third of the wheat. This contract being non-apportionable, this is the rule. Larimore v. Tyler, 88 Mo. 667; Railroad v. Levy, 17 Mo. App. 501; Billups v. Daggs, 38 Mo. App. 367; Fox v. Pullman Co., 16 Mo. App. 289; Hayden v. Grillo, 26 Mo. App. 289; Craycroft v. Walker, 26 Mo. App. 469. (3) If appellant desired fuller instructions he should have asked for them. Hyde v. St. Louis B. & N. Co., 32 Mo. App. 298; Tethero v. Railroad, 98 Mo. 74.

STATEMENT.—This cause originated before a justice of the peace and is a suit in replevin where plaintiff in his statement claimed sixty-six and two-thirds bushels of wheat. His statement and pleading is after the approved forms in such cases. The defendant filed an answer under oath in the justice's court alleging that title to real estate would be an issue and that defendant had purchased by general warranty deed from the plaintiff the land on which the wheat grew, in February, 1905, and that no reservation of growing crops was made in the deed and that the plaintiff's interest in the wheat passed to the defendant by the sale of the land. The justice thereupon certified the case to the circuit court under section 3951 of the Revised Statutes of 1899. The case was there tried before a jury, the plaintiff obtained judgment for the recovery of the wheat, and the defendant has perfected this appeal.

The facts out of which this controversy arose were that the respondent, George M. Turner, owned and lived on a farm in Barry county, and appellant owned and lived on a farm in Lawrence county. On the 16th day of February, 1905, they traded farms. At the time of making their respective conveyances, there was wheat growing on the Turner farm in Barry county, and the controversy in this case grows out of the ownership of that wheat.

It appears that prior to the time the exchange of farms was made, Turner and one Johnson had entered into a contract in regard to the sowing of this crop of wheat; that Johnson had put the wheat in under such agreement and was in possession at the time that respondent Turner and appellant Morris made the trade of their farms.

The conflicting claims of the parties to this litigation may best be shown by their own statements of what was said at the time the farms were traded. The testimony of Turner shows that there was some cavilling as to who should have the wheat, and he testified:

"I remember the conversation I had with Mr. Morris in the presence of Mr. Plummer. He was to have one-third of the wheat on my place here, and I told him I could not trade but one-third, the rest was rented." On the other hand, Morris testified that Turner at the time of the making of the contract said: "I will let you have *my interest* in the wheat on my place. I can't trade Mr. Johnson's; if I do I will have to pay for it." The controversy therefore narrows itself down to this: Was appellant Morris to get only one-third of the growing crop in any event, or was he to get all of the respondent's *interest* whether it should turn out to be one-third or two-thirds of the crop. Each of the parties to the suit introduced evidence tending to support his version of the contract.

As to the contract for the wheat between Turner and Johnson, both of them testified substantially that the contract was that if Turner helped Johnson sow the wheat and performed one-half of the labor and paid one-half of the expenses, Turner was to have two-thirds of the wheat and Johnson one-third; otherwise, Johnson was to have two-thirds of the wheat and Turner one-third. The extent of Turner's interest was therefore conditioned on his doing one-half of the work and bearing one-half of the expenses, in which event he was to receive two-thirds of the crop. This condition he ultimately complied with and became entitled to two-thirds of the crop.

There was also introduced in evidence the warranty deed made by Turner to Morris on the 16th of February, 1905, which contained the following clause: "The said George M. Turner and Sarah E. Turner each intend to convey all the right, title and interest they have in the above entitled land." Otherwise, the deed is in the regular approved form in use in case of conveyance of land by warranty deed. At the trial no evidence was introduced by either party explaining why this

clause was put in the deed or what the parties understood that it meant.

NIXON, P. J. (after stating the facts).—I. At the close of the evidence in the case, the appellant tendered a peremptory instruction and asked the court to require the jury to return a verdict for him on the ground that the plaintiff had failed to make out a case. This instruction was based upon the appellant's theory that the crop of wheat growing on the land at the time of the deed of conveyance to him carried with it the title to the wheat.

This instruction was properly refused as it was based upon an entire misconception of the law as applicable to the state of facts in this record. Whatever opinions were formerly entertained on this point, it seems quite well-established now both in England and in this country that annual crops, crops raised by yearly labor and cultivation, or *fructus industriales,* are to be regarded as personal chattels, independent of and distinct from the land, capable of being sold by oral contract, and this without regard to whether the crops are growing, or, having matured, have ceased to derive any nutriment from the soil. [Garth v. Caldwell, 72 Mo. 627; Swafford v. Spratt, 93 Mo. App. 634, 67 S. W. 701; Edwards v. Eveler, 84 Mo. App. 405.]

To sustain his contention as to the law, the appellant has referred us to the case of Hayden v. Burkemper, 101 Mo. 644, 14 S. W. 767. This is a petard which hoists the contention of the appellant, and the full force and effect of the cases already cited is recognized and upheld in that opinion in these words: "These cases (referring to Garth v. Caldwell, *supra,* and others) show that there can be, and often is, an ownership of the growing crops in one person, while the ownership of the land is in another. These cases are wholly unlike the one in hand, and we do not see that they assert any principle inconsistent with the conclusion before

stated." In the case at bar, both appellant and respondent claimed that there was a verbal contract as to the disposition of the growing wheat crop on the Turner farm, the only contention being as to how much wheat the appellant was to get under such agreement.

II. It is further claimed by appellant that error was committed in the refusal of the trial court to allow him to offer proper evidence. The error complained of was that he offered to prove what was the general custom of renting in the neighborhood of where the wheat in question was growing. He proposed to prove that it was customary for the tenant to get two-thirds and the owner of the land one-third of the crop. As the uncontradicted evidence of Turner and Johnson showed that they had an express contract as to how much each should receive of the growing crop, the offer of evidence was wholly incompetent for any purpose in this case. There is no presumption that the parties contracted with reference to a certain custom as they testified that their contract expressly provided what share each one should have of the crop. The evidence rejected was irrelevant and foreign to any issue in the case.

III. The appellant assigns as error that the court improperly admitted evidence of the conversations between Johnson and Turner not in appellant's presence as to paying the expenses of making and harvesting the crop. Under the peculiar conditions of the contract between Turner and Johnson, which provided that Turner should have two-thirds of the crop if he should pay one-half of the expense of making and harvesting it and do one-half the work, the evidence was competent to show that he did comply with such contract and that he was entitled under his contract with Johnson to two-thirds of the wheat grown on the place; otherwise, it would have been impossible for respondent to have shown whether Johnson was to have one-third of the

wheat or two-thirds, a question directly at issue in the case.

IV.   Objection is also made to the giving of instructions by the court for the respondent.   Two instructions were given.   The instruction for the respondent is as follows:

"The court instructs the jury that if they believe from the evidence that at the time plaintiff and defendant made their contract in regard to the crop of wheat growing on plaintiff's farm, the plaintiff informed defendant that he only had title to one-third of said wheat, and if you believe that was all of said wheat he had title to, at the time, and that defendant agreed to take one-third of said wheat in said trade; that said wheat was in the joint possession of plaintiff and one Andrew Johnson, and that the title to said wheat in controversy was not to pass to plaintiff until he had paid for one-half of the harvesting of the same, then you will find the issues for the plaintiff."

This instruction, although somewhat inartistically drawn and subject to criticism, could be readily comprehended by the ordinary juror and expresses a correct principle of law as applied to the facts of the case, and no material error was committed by the court in giving it.

On behalf of the defendant (appellant), the court gave the following instruction:

"The court instructs the jury that if they find from the evidence that the wheat in question was growing on the land deeded to defendant on the 16th day of February, 1905, and that plaintiff did not reserve any part of said wheat in said deed, then, in that event, all interest that plaintiff had in said wheat passed to defendant, regardless of any oral understanding or agreement, if any, that plaintiff and defendant may have had before the deed was made and delivered."   It may be remarked that the instruction given in appellant's behalf was in plain contradiction to the instruction given for the re-

spondent as the deed referred to contained no reservation whatever of wheat growing on the place. The error in appellant's instruction was in his favor and will not authorize a reversal because the court did not commit the same error in giving the instruction for the respondent.

The verdict of the jury was sustained by the evidence in the case, the judgment was for the right party and should be affirmed. All concur.