FRANCES V. H. DENVIR v. S. H. CROWE, Appellant.—9 S. W. (2d) 957.

Division Two, October 6, 1928.

*Virginia J. Booth, James Booth* and *Joseph C. McAtee* for appellant.

*Carter, Jones & Turney* and *Robert Burkham* for respondent.

HIGBEE, C.—This action was instituted December 29, 1922, by the respondent, formerly Mrs. Roscoe R. S. Parsons, in the Circuit Court of the City of St. Louis, for damages for the conversion of an Aeolian pipe organ, the damages being laid at $10,000. The answer is a general denial. A trial to the court without a jury resulted in a finding and judgment for plaintiff in the sum of $8000, and defendant appealed.

The evidence is in substance as follows:

Mr. C. P. Parsons, actively connected with the St. Joseph Lead Company, had lived with his family in a large brick residence at Riverside, Jefferson County, Missouri. He bought and installed the organ in this building in 1906. The price paid was $6000. The instrument consists of the organ proper and the console, which is the case around the keyboard. The console is attached to the keyboard by two screws. A window in the outside wall of the music room was taken out, a part of the wall removed, a false jam put in, and a room, nine by ten feet inside measurement, was built of concrete blocks on the outside of and against the wall. The organ was installed in this concrete room and rests on the foundation. It is not secured or nailed down. The pipes of the organ stand in racks upon what is known as the chestwork, made of wood, which is fastened to the foundation frames upon the floor. In front of the organ is a grill work attached to the building. It is no part of the organ. The keyboard is in the music room.

Mr. Parsons died, testate, in 1910, survived by his widow, two sons and three daughters. He made certain specific bequests, leaving the residue of his estate to his widow and his two sons Roscoe and Gerard and to the survivors or survivor of them, as trustees. The trustees were to pay the net income to his wife, Jane E. Parsons, during her life and make distribution of the estate at her death. They were required to divide the estate into "as many equal portions as there are children or descendants (or husbands or wives) of then deceased children living at the time of distribution; the descendants or wife of one of my said children, if then deceased, being counted in place of their deceased parent."

The trustees were empowered to make division in kind or to sell and convert into cash or to divide partly in cash and partly in kind, and to place a value on any asset for the purpose of such division, and all divisions as made by the trustees shall be final and conclusive upon the beneficiaries.

Mrs. Parsons died April 29, 1915. Of the three daughters, one, Jessie H. Parsons, married Ben Blewett and died in 1914. Mr. Blewett died before the trial of this case. They had no children. The other daughters married and they and their husbands were living at

the time of the trial. One of the sons, Roscoe Parsons, plaintiff's husband, died testate on August 27, 1915, four months after his mother's death. They had one child, Frances, who died in January, 1916, aged seven years. The other son, Gerard S. Parsons, who was living in January, 1916, died before this case was tried. Roscoe Parsons, by his will duly probated, after mentioning his daughter, devised his property to his widow, the plaintiff in this case.

There were numerous family meetings and discussions relative to the distribution or partition of the estate. Finally a meeting was called by Gerard S. Parsons, the surviving trustee, and held in January, 1916, to determine whether certain of the beneficiaries should buy the Riverside property and to distribute the goods and chattels at Riverside. It was agreed that the organ should go to Mrs. Roscoe Parsons, as appears by a memorandum made at the time, and the Riverside property should be conveyed to Mrs. Mabel Parsons Knapp, Mrs. Roscoe Parsons and Ben Blewett. Pursuant to this conclusion a few days later, on February 5, 1916, Gerard Parsons, the surviving trustee, executed a deed (plaintiff's Exhibit B) conveying the Riverside property to Mrs. Mabel Parsons Knapp, Mrs. Frances Parsons and Ben Blewett, with apt references to the powers contained in the will of the testator. The deed contains the following recital:

"The improvements located upon the property hereby conveyed consist of one (1) four-story brick residence at Riverside, Missouri, it being intended to convey not only the real estate hereinbefore described but also the horses, cows and other live stock and chattels constituting the entire equipment of said Riverside property, but not including the household furniture, fixtures and other equipment which have heretofore been divided by voluntary partition and agreement between all of the beneficiaries of said trust."

On July 1, 1916, Mabel Parsons Knapp, Frances Parsons and Ben Blewett, the grantees in plaintiff's Exhibit B, conveyed the Riverside property by warranty deed (plaintiff's Exhibit C) to J. D. DeBuchananne and Richard Francis, with the following recitations:

" . . . except the pipe organ now installed in the brick residence located upon said property at Riverside . . . It is understood and agreed that the pipe organ aforesaid installed in the brick residence at Riverside is and shall remain the property of Frances V. H. Parsons, one of the parties of the first part, and the parties of the second part, by accepting this deed, covenant and agree that said Frances V. H. Parsons, her successors and assigns, shall have the right to enter upon said premises and to take possession of and remove said organ," etc.

The defendant read in evidence (defendant's Exhibit 3) a warranty deed dated July 31, 1917, from the grantees, J. D. DeBuchan-

anne and Richard Francis, conveying the said Riverside property to National Farm School & Vocational Training Institute, with recitations excepting the organ in the brick residence and reserving plaintiff's right to enter and remove the organ, as recited in plaintiff's Exhibit C. This grantee conveyed the Riverside property by warranty deed dated January 24, 1918 (defendant's Exhibit 5) from Richard Francis to National Farm School & Vocational Training Institute, conveying said Riverside property "together with all improvements except pipe organ now installed in the brick residence," etc.

Defendant also read in evidence (defendant's Exhibit 6) a quitclaim deed dated May 31, 1919, executed by National Farm School & Vocational Training Institute, conveying said Riverside property to Quick Payment Old Line Insurance Company, without exceptions. This last-named grantee conveyed the property to Richard Francis by warranty deed, dated July 3, 1919 (defendant's Exhibit 7), "together with all improvements thereon except pipe organ now installed in the brick residence," etc.

Richard Francis negotiated a sale of this property to the defendant S. H. Crowe, and tendered him a warranty deed therefor which excepted the pipe organ from the conveyance. All the foregoing deeds had been promptly filed and recorded in the office of the Recorder of Deeds, and there is substantial evidence that Crowe had actual notice of the exception of the organ and plaintiff's reserved right to enter the residence and remove the organ as recited in the above mentioned conveyances, before he paid for the property. Crowe refused the deed so tendered and thereupon Francis executed and delivered to him a warranty deed (defendant's Exhibit 8), dated August 9, 1919, conveying said Riverside property to Crowe without exception or reservation as to the organ.

The plaintiff was out of the State at the time of this conveyance and on learning that the defendant was asserting some claim to the organ, instructed her attorney to demand it from Mr. Crowe. This was done. The defendant, in a letter to plaintiff's attorney, refused to let her have the organ, saying: "I have a warranty deed . . . with no exceptions . . . . It is my intention to have it repaired, if cost is not excessive. Part of the brick wall is built around the instrument and it is surely a part of the wall."

Plaintiff instituted an action of replevin against the defendant for the organ in April, 1920, which went to trial and a voluntary nonsuit was taken. Shortly thereafter the present action was commenced.

At the trial there was evidence that the market value of the organ in November, 1920, when last examined by the witness, was $8000; that it would cost $1250 to repair it. The defendant testified that

he had never had the organ examined by an expert; that he thought it was his and that he would leave it there until he was able to put it in repair and that he claimed absolute ownership by virtue of the warranty deed from Francis.

I. Appellant contends that the organ was installed in a room built for its reception and, being for the permanent use and enjoyment of the owner and affixed to the building, was a fixture, citing Rogers v. Crow, 40 Mo. 91, 96; Thomas v. Davis, 76 Mo. 72; Crane Co. v. Epworth Hotel Constr. & Real Estate Co., 121 Mo. App. 209, 218. This is apparently conceded by respondent. A room to receive the organ was built and it was installed therein. The organ is so heavy it was effectually kept in place by gravity. The keyboard was within the music room and was attached to the jams by two screws. Considering that the organ was thus installed for the use and enjoyment of the owner and his family, we have no doubt that according to the modern cases it should be regarded as a part of the building. [26 C. J. 661, and cases cited supra.]

II. Under the will of Charles P. Parsons, upon the death of his widow, the right to a distributive share vested in his son Roscoe. Roscoe survived his mother who died on April 29, 1915. Roscoe married the plaintiff in May, 1908, and died testate on August 27, 1915, leaving his widow, the plaintiff, and Frances, a daughter, surviving him. The evidence is that Frances died in January, 1916, at about seven years of age. Roscoe, by his will, devised all of his property to his widow. The distribution provided for in the will of C. P. Parsons was delayed for some reason and did not occur until January, 1916, after Roscoe's death. The date of the final meeting for the distribution was fixed by the plaintiff as at the end of January, 1916. Dr. Knapp testified it was in January or February, 1916. It is appellant's contention that the distribution of the property was prior to the death of Roscoe's daughter and that she and not her mother, the plaintiff, acquired the organ. This distribution was effected under the advice of able counsel, and on February 5, 1916, within a few days after the distribution, the Riverside property and all improvements, etc., thereon, "but not including the household furniture, fixtures and other equipment which have heretofore been divided by voluntary partition and agreement between all of the beneficiaries of said trust," were conveyed by Gerard Parsons, the surviving trustee, to Mrs. Knapp, Mrs. Roscoe Parsons (the plaintiff) and Ben Blewett. This deed was filed for record on April 6, 1916. The evidence is clear that at the meeting at which the distribution was made, the

organ was allotted to the plaintiff. Appellant's contention that the distribution was prior to the death of the daughter Frances is unsupported by any substantial evidence. But if she were alive at that time, it would not avail appellant, since the mother was her sole heir and succeeded to whatever interest the daughter may have had in the estate. Apparently this contention was not made at the trial, but is raised for the first time in counsel's brief on this appeal. There is no merit in it.

Conceding, as we think it must be conceded, that the organ was a fixture, there seems to be no doubt that the devisees of Mr. Parsons could and did, by mutual agreement, effect a severance thereof by allotting it to the plaintiff as her property. [26 C. J. 691, sec. 68.] The conveyance by Gerard Parsons, surviving trustee, to Mrs. Knapp, Mrs. Frances Parsons, plaintiff, and Ben Blewett expressly excepted furniture, fixtures, etc., which had been divided by voluntary partition and agreement (plaintiff's Exhibit B). The conveyance of the Riverside property by the above-named grantees to DeBuchananne and Francis expressly excepted the pipe organ and provided that it should remain plaintiff's property and also contained a covenant that she might enter the premises and remove it. This exception and reserved right to remove the organ was a constructive severance of the organ from the freehold. [26 C. J. 691, sec. 69.] In the deed from DeBuchananne and Francis to National Farm School & Vocational Training Institute, read in evidence by the appellant, the pipe organ is not only excepted but it is expressly recited that it is "the property of Frances V. H. Parsons" and that she may enter upon the premises, take possession of and remove said organ, etc. The appellant claims title to the Riverside property through these deeds and is bound by their recitals and covenants. [21 C. J. 1088; Tyler v. Hall, 106 Mo. 313, 319, 17 S. W. 319; Stoutimore v. Clark, 70 Mo. 471, 478; Am. Clay Machinery Co. v. Brick & Tile Co., 174 Mo. App. 485, 492, 160 S. W. 902; Cox v. McKinney, 258 S. W. 445; Pile v. Holloway, 129 Mo. App. 593, 595, 107 S. W. 1043.]

The appellant bought the Riverside property with actual as well as constructive notice that the organ was plaintiff's property and of her right to enter and remove it.

"The severance of a fixture, whether actual or constructive, as making it personalty, renders it a proper subject for an action of trover." [26 C. J. 734; Neiswanger v. Squier, 73 Mo. 192, 198; Pile v. Holloway, supra; Am. Clay Mchy. Co. v. Brick & Tile Co., supra, 485.]

There was substantial evidence as to the value of the organ.

The court properly overruled the demurrer to the evidence, tendered at the close of the case. The case was submitted without declarations of law. The finding of the learned trial court is supported by substantial evidence, and is accordingly affirmed. *Davis* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by HIGBEE, C., is adopted as the opinion of the court. All of the judges concur.